OSWEGO COUNTY—HON. AMOS G. HULL, SURROGATE—December, 1863.

### IRWIN v. IRWIN.

*In the Matter of the Probate of the Last Will and Testament of* JAMES G. IRWIN, *deceased.*

Both of the attesting witnesses swore positively that neither the testator nor any other person present declared, at the execution, that the paper propounded was the testator's last will and testament, although a person who superintended the execution testified to the contrary. *Held,* that probate must be refused.

It cannot help the case that an attestation clause was read in the presence of the testator and of the witnesses, where one of the latter swears positively that he did not hear the same and knew not the nature thereof.

James G. Irwin died in January, 1863, leaving a will, which was offered for probate. The widow of the deceased objected to the probate, on the grounds that the will was not properly executed, and that there was not a sufficient publication of the instrument.

It appeared by the testimony of John Hunter, who drew the will, that he read the will to the testator, and then told him to·call his witnesses. The testator went to the door and called in Henry White and James H. Irwin. Hunter then said to the witnesses, "We want you to witness this will." The testator signed the will in the presence of the witnesses. Hunter testified that he held the will in his hand, and asked the testator "if he acknowledged that signature to be his signature to his last will and testament," and the testator answered "yes," though he would not swear positively that he used the words "last will and testament."

Both of the subscribing witnesses swore positively that the words used by Hunter were, "Do you acknowledge this to be your signature, Mr. Irwin?" White swore that he was positive Hunter did not use the words will and testament; and the other subscribing witness, James H. Irwin, testified, "My father said nothing about that being a will, nor did I hear any one then speak of it as a will; I did not know what I had been signing, or the nature of the paper." Mrs. McFarland, who was present, testified that she "heard nothing about a will or testament then, or on that day."

Hunter testified that he read the attesting clause aloud, in his ordinary tone of voice; while White swore that he read it in a very low tone, not loud enough for a person to hear at a distance of five or six feet. Hunter sat some eight feet from the testator when he read the clause. The other subscribing witness swore that he thought Hunter read something to White in a low tone of voice,—"which I could not hear." White testified that he knew, at the time, that the testator had not requested him to sign it, and that he had not declared it to be his last will and testament. Nothing was said about witnessing a will. The testator said nothing about a

will in the hearing of the witnesses. The other subscribing witness corroborated the testimony of White.

MARSH & WEBB, *for Contestants.*

I. The instrument presented for probate in this case was not published as a will, as required by subd. 3 of section 35, of 3 Rev. Stat., 144, and is therefore not a will.

II. This is not a case where the subscribing witnesses do not remember one way or the other, but where they give affirmative proof that the instrument was not published as a will; and the attestation clause does not relieve the difficulty. (*Lewis* v. *Lewis*, 13 *Barb.*, 17; *Remsen* v. *Brinkerhoff*, 24 *Wend.*, 325; *Exp. Beers*, 2 *Bradf.*, 163.)

III. The publication must be made to each of the witnesses. (*Seymour* v. *Van Wyck*, 2 *Seld.*, 120.)

IV. The testator is bound to know that the witnesses know the testamentary nature of the act, and *vice versa.* The minds of the parties must meet on that point. (*Wilson* v. *Hitterick*, 2 *Bradf.*, 427; *Exp. Beers*, 2 *Id.*, 163; *Lewis* v. *Lewis*, 11 *N. Y.*, 220.) Whatever may have been said by Hunter, the subscribing witness, James H. Irwin, knew of no publication of the will, and therefore it is not a will under the statute.

E. S. PARDEE, *for Proponents.*

THE SURROGATE.—The testimony in this case fails to show a sufficient publication.

It is unlike the cases where the subscribing witnesses fail to remember what occurred. Here they expressly swear that the vital requisites to the valid execution of the will did not occur.

Our statute goes further than the English statute in respect to the publication of the will. Our courts hold parties to a strict compliance with the statute in this respect.

In the case of *Lewis* v. *Lewis* (1 *Kern.*, 220), the testator said, "I declare the within to be my free will and deed," yet .

the court held that such a declaration was not a sufficient declaration that the instrument was his last will and testament.

The probate of the instrument must be denied.